IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA    )
    )
vs.    )    CASE NO.   2:16CR20007-002
    )
    )
AMELIA MARIE SPIOTTO    )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by and through Dustin Roberts, Assistant United States Attorney and files its Response to the Defendant's Sentencing Memorandum (Doc. 75). For all matters relevant, the Government states the following:

**OVERVIEW AND SENTENCE RECOMMENDATION**

On or about March 16, 2016, the defendant(s), James and Amelia Spiotto, were named in a Seven (7) count Indictment filed in the Western District of Arkansas. The Indictment charges Amelia Spiotto and her co-defendant, James Spiotto, with multiple child pornography related offenses. On February 8, 2017, the defendant pleaded guilty to Count Four (4) and Count Five (5) of the Indictment, which charges the defendant with Sexual Exploitation of two different minors by the Production of Child Pornography. The offense conduct set out in the plea agreement and Presentence Report (PSR) overall reflects that the defendant and her co-defendant on two occasions planned and encouraged each other to sexually abuse two infants and documented such abuse via digital recordings. The defendant's conduct included orally raping the 3-month old male, molesting and anally raping the 11-month old female, and facilitating and encouraging her co-defendant, James Spiotto, in his molestation and rape of the 11-month old female.

1

At present, U.S. Probation's calculation of the sentencing guidelines set out in the Pre-Sentence Report reflects an advisory range of life, which is capped by the offense maximum of 720 months or 60 years. There remains multiple unresolved objections to the PSR. All of said unresolved objections were lodged by the defendant. However, even if the guideline determinative objections were satisfied in the defendant's favor, the advisory range would remain at "life" or 720 months.[1]

With respect to the unresolved defense objection, the Government maintains that this Court should overrule such in toto, as they are legally insufficient. Alternatively, given the multitude of the defendant's objections, the Government anticipates calling one witness at sentencing to provide proof supporting the contented PSR sections. Said witnesses testimony would be approximately 30 minutes. However, regardless of the objected to portions of the PSR, just based on the horrendous offense conduct laid out in the plea agreement in this case and in consideration of the § 3553(A) factors, the Government *asserts a term of imprisonment of 60 years* is appropriate. The Government maintains such a disposition is proper because the offense herein amounts to the single most depraved child exploitation case ever presented to this Court.

---

1 The guideline calculation set out in the Final PSR has a total offense level calculated at 52. The defense lodged objections to 4 paragraphs under the heading "offense level computation." While the Government sees no legal validity to said objections, resolving such in the defendant's favor still results in a guideline level 43, range of Life. Essentially, satisfying defense's objection to paragraph 76 results in an adjusted offense level of 44 on group one, and objections to paragraphs 86/87 reduces the second group by 6 levels, resulting in a 42. Consequently, for grouping purposes, 2 points are added to the highest offense level, namely group one/ offense level 44. This results in a total offense level of 46, minus 3 for acceptance, which equates to a 43, range of life.

## I.      GUIDELINE OBJECTIONS MADE BY DEFENDANT

As noted above, the in considering all the guideline determinative objections lodged by the defendant, the resulting advisory range will remain life. However, the defendant also objects to the vast majority of all offense conduct paragraphs as well. The Government maintains that all the objections are without legal merit, and/or too vague to qualify as a valid PSR objection.

Specifically, with regard to the defendant's **Objection One – paragraph 41**-, the defendant, in essence, acknowledges that the paragraph in question details what James Spiotto told law enforcement, but objects in stating he doesn't have personal knowledge of such and/or got certain facts wrong. The United States submits that this is not a valid objection. The paragraph clearly details a co-defendant's statement to law enforcement. A proper objection would be either that statement is either wrongly detailed in the PSR or that the statement never happened. But acknowledging he stated such, but objecting to his basis of knowledge has been deemed insufficient by the Eighth Circuit in *United States v. Pepper*, 747 F.3d 520, 524 (8th Cir. 2014). In *Pepper*, the Eighth Circuit concluded that:

> [t]he facts contained in paragraphs 23 through 26 were not based on admissions made by Pepper. Rather, those paragraphs relied on statements made to law enforcement officers by Charles and two other men. Moreover, at the sentencing hearing, Pepper's counsel conceded that Charles and the others had made those statements. Thus, Pepper's objections that he did not admit the facts contained in paragraphs 23 through 26 do not imply that those facts are untrue. As such, Pepper's objections lack the specificity and clarity necessary to preclude the district court from relying on the facts contained in the PSR. (*See also United States v. Davis*, 583 F.3d 1081, 1095–96 (8th Cir.2009) (holding that district court could rely on facts contained in PSR where defendant objected that he did "not concede the accuracy of any of the summaries of the offense conduct for the offenses listed in the offense conduct section").

At present, the defense main objection is that, the otherwise accurate, quotes of her co-defendant are on matters of which he would have no personal knowledge. The Court in

*Pepper* also addressed the reliability of co-defendant statements, in that:

> In sentencing, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3. Charles's statements that he had received firearms from Pepper were corroborated by the fact that the machine gun that Pepper had purchased from a pawn shop was found in Charles's possession. The corroboration of a declarant's statement provides sufficient indicia of reliability to support the statement's probable accuracy. Id. (Citing *United States v. Woods,* 596 F.3d 445, 448 (8th Cir.2010) (finding that corroboration of hearsay statements supported the statements' probable accuracy);

With regard to **Objection Two - paragraph 44**- the Government maintains that said objection is likewise not a valid objection and should be overruled by the Court. Said paragraph again relates what a witness told law enforcement. The defendant is not denying that the information contained in paragraph 44 accurately relays the facts as reported by the witness, but simply states she has no knowledge of and/or denies the conduct.

With regard to **Objection Three - paragraph 49**-this is simply not a valid objection. The paragraph relays information about a child pornography video sent by Amelia Spiotto to James Spiotto during the relevant time period. To the extent this is a challenge to relevant conduct, the defendant was charged with conspiracy to produce child pornography. Cleary, a video sent by Amelia Spiotto to her co-defendant James Spiotto with the caption of "haven't started yet but this is turning me on" is an admission and would have been admissible if this case went to trial. Accordingly, its properly evidence of a dismissed count, and therefore is relevant conduct under U.S.S.G. § 1B1.3(B)(Jointly Undertaken Criminal Activity). The conduct outlined in said paragraph likewise satisfies a guideline enhancement, specifically the distribution enhancement located at § 2G2.1(b)(3). To the extent that Counsel maintains that she did not recall seeing this video, the description of the video file is listed Indictment Report #3 provided in discovery. Also,

prior to the entry of the plea in this case, the undersigned AUSA met with defense counsel at the HSI Fort Smith Office and reviewed all the video evidence in this case.

With respect to **Objection Four - paragraphs 50 to 53**- again the defendant is charged with conspiracy and the evidence is that she and her co-defendant James Spiotto made video recordings of themselves narrating the rape of minors FOR each other. Moreover, it is clear that Amelia Spiotto was the one who obtained custody of the victim of that rape and recording, and provided said minor to James Spiotto with the express purpose of rape and production of the video at issue. Given the fact that the defendant obtained custody of the minor depicted in the video and conspired with James Spiotto to separately produce child pornography of that very minor victim, the recording of such activity by James Spiotto constitutes relevant conduct.

With respect to **Objection Five - paragraphs 54 to 58**- the Government maintains that said objection lacks the specificity and clarity necessary to preclude the district court from relying on the facts contained in the PSR. In essence, the defendant is objecting stating "maybe" these facts are accurate, but the defense does not want to take a position at this time. However, the time to take a position is after the initial PSR is published and *prior* to sentencing.

With respect to **Objection(s) Seven and Eight - paragraph 76, 86-87**- the Government maintains that both objections are legally baseless. The enhancement at issue in paragraph 76 and 86 is for distribution of child pornography. As US Probation responded in the PSR addendum, inherent in said objection, the defendant admits to distributing a video of child pornography to her co-defendant. As noted in *United States v. Kruse*, 618 F. Supp. 2d 981, 992–93 (N.D. Iowa 2009), "when Defendant showed the 2005 Recording to [two minor victims], he "distributed" the child pornography contained in that recording. (See also *United States v. Postel,* 524 F.Supp.2d 1120,

1123, n. 3 (N.D.Iowa 2006)( holding when a defendant "turned on his computer, loaded up [...] child pornography and directly displayed it to [a minor]," the defendant "thereby 'distributed' it to [the minor]).

With respect to **Objection Eight - paragraphs 86 & 87**- the Government again submits that this objection is legally insufficient, as the conduct at issue satisfies the requirements for the sadistic/masochistic enhancement. (*See United States v. Parker,* 267 F.3d 839,847 (8th Cir. 2001)(holding that sexual penetration of a minor girl using a large carrot were depictions of violence or sadism warranting the four- level increase in § 2G2.2(b)(3) See also ; *United States v. Hall,* 312 F.3d 1250, 1261-63 (11th Cir. 2002) (images showing vaginal or anal penetration of a prepubescent minor by either an adult male or a foreign object is sadistic within the meaning of § 2G2.2(b)(3)). At present, the facts admitted to in the plea agreement state, among other acts, that the defendant anally raped an 11-month- old with a thermometer. Her text messages to a co-defendant reflect that she "tore her a lil." (PSR 59). As such, said enhancement is satisfied. The defense has set forth no legal authority or Guideline provision to the contrary.

With respect to **Objection Nine -paragraph 97**-the Government again asserts there is no legal basis supporting said objection. U.S.S.G. § 4B1.5(b) applies specifically when subsection (a), dealing with prior sex offense convictions, does not. The commentary dealing with subsection (b) clearly explains that no prior conviction is required and that the conduct triggering the enhancement under subsection (b) may be the conduct of the present offense. In fact, the Eighth Circuit has likewise held that this provision applicable based solely on two separate qualifying occasions of prohibited sexual conduct that occurred during the commission of the current offense.

6

(See *United States v. Rojas*, 520 F.3d 876 (8th Cir. 2008). Pursuant to Application note 4(A), "prohibited sexual conduct" includes the production and trafficking of child pornography. At present, the defendant's plea of guilty that centers on her acts of molesting two separate infants satisfies the requirements of said enhancement.

All other objections do not affect the offense conduct, relevant conduct, and/or the Guidelines, and as such do not require a ruling. The Government will address the defendant's asserted basis for a downward departure later in its response herein.

## II.    APPLICATION OF THE 3553(a) FACTORS

### A.    NATURE AND CIRCUMSTANCES OF OFFENSE

In January of 2016, the Internet Crimes Against Children Taskforce and the Department of Homeland Security noted that a particular computer in Fort Smith was downloading and distributing known images of child pornography. (Plea Agreement, p.3/ PSR 17-23). On February 8, 2016, law enforcement executed a federal search warrant at the home of James Spiotto. (PSR 23). Of note, law enforcement observed that a second story window was open and an external hard drive had been thrown out of such. (PSR 23). In speaking with James Spiotto, he initially denied involvement or conduct related to child pornography. (PSR 25). The defendant, Amelia Spiotto, was likewise interviewed on the scene, and denied any involvement with child pornography. (PSR 26). However, while on the scene, law enforcement located a video of James and Amelia Spiotto watching child pornography, in which Amelia can be heard discussing how to "prep" a female child for sexual abuse. (PSR 27). Later the same day, Amelia Spiotto voluntarily came to Homeland Security. During a post-Miranda statement, she told law enforcement that James Spiotto

forcefully held her head in an attempt to make her watch child pornography, but she wasn't into such.

During a subsequent interview, James Spiotto admitted that he and his co-defendant, Amelia Spiotto, have, in fact, been watching child pornography and even molested two small children approximately two (2) weeks prior to the execution of the warrant. (PSR 35-41). James Spiotto elaborated that his co-defendant made arrangements to babysit both a 3-month-old and separately an 11-month old female. Upon obtaining the 11-month old female, James Spiotto stated that Amelia raped her anally with a thermometer and that, later, he placed his penis in the infant's mouth. (PSR 39-41). He also added that they recorded this activity for each other, and that Amelia Spiotto would write "fantasy stories" surrounding their sexual relationships with children. (PSR 37).

During the subsequent investigation, the external hard drive thrown from the window was forensically examined. (PSR 46). Said examination revealed multiple self-produced recordings of both Amelia and James Spiotto molesting the two children at issue. Under a folder entitled "for daddy," Amelia Spiotto saved a video file of her preforming oral sex on the 3-month old male and forcing her breast in said infant's mouth. She likewise recorded herself penetrating the 11-month old female's anus and fondling the minor's vagina, all while the minor screamed and tried to get away. The recording culminates in Amelia Spiotto spitting on the minor's vagina. (PSR 48). While Amelia Spiotto was rapping both minors, she was also communicating via text message with James Spiotto. (See PSR 59).[2] After raping the minor female, she provided her to James Spoitto with the

_____

2 Due to the extremely disturbing nature of these videos, and in lieu of describing such above, the Government intends to file the AUDIO only portion of the video underseal to facilitate an in-camera inspection so as provide the Court with a full understanding of the nature and

understanding that he was also going to rape her.

In addition to the production videos, law enforcement located multiple videos on the external hard drive that depicted Amelia Spiotto talking about sexually abusing minors. In addition to the production videos, law enforcement located the following three (3) videos: one of her masturbating as she comments how she wants to sexual abuse two (2) specific minors, a video of her stating that a minor female depicted in a video of child pornography is smart based on how she is orally raped, and finally a video of Amelia Spiotto stating that they can convenience a minor to show her vagina by telling her to clean it." (PSR 54/55/57/58).[3]

Clearly, the sheer deviate sexual pleasure Amelia Spiotto derived from molesting the two minors involved in this case, supports the imposition of a 60-year sentence. Moreover, it is important to note, that it was Amelia Spiotto who arranged to be in custody of the minors. It was Amelia Spiotto, who in both instances molested the children without James Spiotto even being present. And it was Amelia Spiotto who sent her co-defendant such statements as "I enjoyed the hell out of it does that make me a bad person" directly after she anally raped an 11-month old baby." (PSR 59). So, while Amelia Spiotto blamed James Spiotto during her conversations with law enforcement, she is the one that orchestrated the entire criminal episode, from obtaining custody of the infants, to being the first to molest such. And she is deserving of a sixty (60) year sentence.

_____

circumstances of the instant offense as set out in 18 U.S.C. § 3553(a).
3  The Government will likewise ask the court to file the audio of these three recordings under seal to further show her involvement in the matter, which is in direct response to the claim made by the defense in their sentencing memo, stating it was neither her " idea, interest, or fetish."

**B.      NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES AND PROVIDE A JUST PUNISHMENT**

The Government asserts that the instant offense conduct is the most depraved and severe ever presented to this Court. While the conduct alone justifies the imposition of a 60-year term of imprisonment, said sentence would also be consistent with other production cases brought in the Western District of Arkansas, including that of the Co-defendant herein, James Spiotto.

To provide prospective, in 2014, two individuals were sentenced on charges of Production of Child Pornography in the Western District of Arkansas to 60 and 55 year sentences respectively. In *United States v Baughman*, Case No. 5:13CR50080-001, the child pornography produced by the defendant depicted the defendant fondling the penis of a seven-year-old male and separately digitally penetrating the vagina of an approximately seven year old female. *Baughman* had no priors, molested two children, and received a 60 year sentence. In *United States v Oziah*, Case No. 5:13CR50103-001, the sexual abuse depicted in the production focused on oral sex between the defendant and an approximately eight year old male. Similarly, Oziah had a prior *juvenile adjudication* for sexual assault. However, in both of the above-mentioned cases, neither of the defendant's molested nor produced images of an infant, which is in itself extraordinarily depraved. Additionally, in *United States v. Roger Bates*, Case No. 2:12CR20010-001, the defendant received a 60 year sentence after pleading guilty to two counts of producing sexually explicit images of a seven year old female. In that case, the images involved in the production depicted close up images of the minor's vagina, as well as images of the minor holding the defendant's penis (no evidence of physical force or pain inflicted). At sentencing, relevant conduct supported that the defendant

10

had molested other minors. With respect to abusing very young minors, the only case brought in the Western District of Arkansas the undersigned AUSA knows about that is even remotely similar is the case of *United States v. Scott Sholds*, Case no. 5:14CR50035-001. In *Sholds*, the defendant received an 80-year sentence for video recording his rape of a two year old female. That is essentially a life sentence for the rape of one toddler. At present, this defendant raped two babies…not even of toddler age yet… and thereafter facilitated the rape of one of the babies by her co-defendant.

Finally, on July 25, 2017, this Honorable Court sentenced the co-defendant in this case, James Spiotto, to a term of imprisonment of 60 years. It should be noted that during his sentencing, James Spiotto informed the Court that it was his relationship with Amelia Spiotto and the taboo sexual activities they engaged in, which lead to his involvement in this crime. Specifically, he said taboo sex was "like a drug, and they overdosed." His attorney also claimed that his involvement in this crime was due to mental health problems resulting from his sexual abuse as a child. However, given the aggravating factors of the case as applied to the § 3553(a) sentencing considerations, the Court rightfully sentenced him to 60 years.

Consequently, to provide just punishment with respect to this Defendant, a sentence of 60 years imprisonment is warranted.

## III.    DEFENSE REQUEST FOR A DOWNWARD VARIANCE IS WITHOUT MERIT

At present, the defendant, in essence, claims that she is deserving of a downward variance because, as opposed to James Spiotto's sexual interest in children, it was Amelia Spiotto's intense desire, precipitated by a personality disorder, to satisfy her co-defendant that motivated her to rape two babies. At its core, this claim amounts to a request for a lower sentence because she raped two

babies to please a man, instead of a sexual desire to molest these infants. The Government maintains that this claim is not only against the facts of the case, but also should be viewed as an aggravating factor—that in order to sexually please another, the defendant would, without regard to the victims or anyone else, commit one of the most heinous crimes known to man. And she so not once, but twice, and facilitated a rape by her co-defendant.

Submitted in the defendant's sentencing memorandum is a cut and paste summary opinion from a forensic psychologist, Dr. Benjamin Silber, stating that "based on his interview, [he believes] a diagnosis of Borderline Personality Disorder is most appropriate." (Doc. 75, p.7). In support of such, the defense failed to include anything with regards to Silber's background, training, education etc. The defense likewise failed to include any testing measures the purported doctor used in making his conclusion. The defense also failed to include that he was provided access to any of the investigative reports and/or interviewed anyone else, specifically James Spiotto, involved in the offense. It appears that the purported doctor based his entire diagnosis from "his interview" of the defendant, however long that lasted, and her version of the facts. By itself, this fact is reason to deny the defendant's request as it is lacking in credible support or analysis.

However, in addressing the substance of the sentencing memorandum, the doctor asserts, without support, that "these behaviors [referring to the defendant's rape of two babies] were not her idea, interest or fetish." Doc. 75, p. 7). Again this claim is factually inapposite, given it was Amelia Spiotto who facilitated the entire criminal episode. She is the one who obtained the infants from their parents, under the guise of babysitting. (PSR 40,42). She is the one who first raped the minor female, and the only one of the co-defendants who raped the minor male. While raping the

12

minor female, Amelia Spiotto sent the text message "I think its 20 minutes she didn't enjoy it…I enjoyed the hell out of it." (PSR 59). She likewise made several recordings of herself watching child pornography and making statements like "that's a good way to get [minor's name] to show us her pu**y. Just be like hey clean it. You missed a spot." Even more shocking, law enforcement located a video of Amelia Spiotto masturbating and making such comments of "[s]o I'm thinking about [two specific minor females] thinking how easy it would be to get little [minor female] to show us everything that we want her to. Stretch her butt hole." (PSR 54). Clearly the claim that molesting children was not her "idea, interest, or fetish" could only be derived by only taking into account Amelia Spiotto's current claims and ignoring the objective facts of the case.

Substantively, Dr. Silber attributes Amelia's behavior to James Spiotto, in that "rejecting the sexual offending behaviors suggested by James and losing their relationship would have been terrifying and agonizing for her." (Doc 75, p.8). However, it is important to note that on the very day law enforcement executed the search warrant, Amelia Spiotto told law enforcement that James Spiotto had mentioned on different occasions he would like to view child pornography and even threaten and physically forced her to view such. (PSR 32/33—without objection). So, even though according to Dr. Silber, the defendant did all of this because of an intense need to protect her relationship with James Spiotto, when presented with the opportunity, she had no reservations in blaming him entirely in order to alleviate herself of any criminal responsibility. Of course, the incriminating statements she made about James Spiotto turned out to be lies, as she was voluntarily viewing child pornography, and she omitted the fact that they had been molesting children. But it is clear that her first instinct when law enforcement showed up was to blame, not protect, James Spiotto. This fact, in and of itself, regardless of Amelia Spiotto's present diagnosis, reflects that

13

she was able to control her feelings regarding James Spiotto, at least when it came to her getting into trouble.

The defense is quick to argue that Amelia Spiotto is deserving of a downward variance because she suffers from a diagnosed mental condition. Similarly, during the sentencing hearing of James Spiotto, his attorney argued for a downward variance, because he was molested as a child and had never received proper treatment. While this argument was unconvincing, this Court has seen multiple instances where individuals like James Spiotto, who were once victims, later became predators. In contrast, the defense claims Amelia Spiotto simply committed her crimes simply to please a man who had a sexual attraction to children, which is objectively worse. In fact, she knew her actions were immoral and illegal, and undertook them anyway.

Moreover, the defendant was evaluated, extensively, by the Bureau of Prisons, and found to be competent to stand trial in all regards. As noted by forensic Psychologist Diana Hamilton, "[g]enerally speaking, [a] diagnosis of personality disorders and substance abuse disorders do not diminish one's culpability for criminal acts; nor do they so impair ones understanding or appreciation of reality that they render one not responsible for their acts." (Doc. 51, p. 10). In fact, Dr. Hamilton noted that Amelia Spiotto, "provided a very elaborate and precise account of conversations, text messages, and events regarding the time frame surrounding the alleged offense. (Id).

Finally, as even more evidence that Amelia was without regard to whether James Spiotto was left alone to face punishment, is the fact that while this investigation was ongoing, she fled to Michigan. (PSR 45). In fact, while in Michigan, she assumed an alias, and told US Marshals upon

being apprehended that she was aware of her felony charges and had been attempting to avoid prosecution. (PSR 45).

In summary, while the defense has submitted an opinion as to the level of Amelia Spiotto's culpability, nothing raised by the defense amounts to mitigation in the current case, nor even aligns with the facts of this case. Sexually molesting two infants, and providing one of those infants to another to facilitate further molestation, remains one of the most atrocious crimes presented to this Court regardless of whose sexual appetite was satisfied by such. The crimes and acts involved in this case remain worst of the worst, and are deserving of the most severe punishment allowed.

## <u>CONCLUSION</u>

Considering the defendant's exploitation of multiple very young infants and the level of depravity involved in this case, the United States submits that a sentence of 60 years is justified.

Respectfully submitted,

KENNETH ELSER
UNITED STATES ATTORNEY

By: /S/ Dustin S. Roberts
   Dustin S. Roberts
   Assistant U. S. Attorney
   Arkansas Bar No. 2005185
   414 Parker Ave
   Fort Smith,   AR   72902
   Phone: (479)249-9035

## <u>CERTIFICATE OF SERVICE</u>

I, Dustin Roberts, Assistant U. S. Attorney for the Western District of Arkansas, hereby certify that a true and correct copy of the foregoing pleading was electronically filed on August 7, 2017 with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

KIM WEBER/ JEFF ROSENZWEIG
Assistant Federal Public Defender

/s/ Dustin S. Roberts

Dustin S. Roberts
Assistant U.S. Attorney

16